**BISHOP AND BABCOCK MANUFAC-TURING COMPANY, Plaintiff-Appellant,**

v.

**FEDDERS–QUIGAN CORPORATION, Defendant-Appellee.**

**No. 53, Docket 25087.**

United States Court of Appeals Second Circuit.

Argued Nov. 14, 1958.

Decided Aug. 28, 1959.

Arthur H. Boettcher, Chicago, Ill. (Brown, Jackson, Boettcher & Dienner and Henry H. Babcock, Chicago, Ill., Donald Malcolm, New York City, on the brief), for plaintiff-appellant.

Edwin J. Balluff, Detroit, Mich. (Weisman, Celler, Allen, Spett & Sheinberg, and Arthur Sheinberg, New York City, Balluff & McKinley, Detroit, Mich., on the brief), for defendant-appellee.

Before HINCKS, LUMBARD and MOORE, Circuit Judges.

HINCKS, Circuit Judge.

The plaintiff brought suit in the District Court for the Western District of New York, claiming that the defendant had infringed its patent, Getz No. 2,594,-008. By answer and counterclaim for declaratory judgment, the defendant asserted noninfringement and invalidity. After a trial Judge Morgan, in an unreported memorandum-decision, held the patent invalid; he was also of the opinion that, if the issue were reached, the defendant's structure did not infringe the plaintiff's patent. Accordingly, he dismissed the complaint and granted judgment to the defendant on its counterclaim. This appeal followed.

The patent in suit, issued to the plaintiff, as assignee, on April 22, 1952, purported to cover improvements upon cellular cores for heat exchange units. Such units are commonly used in automobile heaters and radiators. In either use, the principle is the same: cool air passes over metal surfaces heated by circulating water. Somewhat different designs are appropriate, however, depending upon the result sought. If the object is to cool the circulating water, as in a car radiator, it is desirable that large volumes of cooling air be passed through the unit fairly rapidly. If the object be to heat the air, a higher degree of resistance to its passage and longer contact with the heating surface is preferable. But for either purpose, the more intimate the contact of all the air passing through the unit with the heat exchange surfaces, the more efficient is the unit.

The rapid growth of the automobile industry, with its constant demands for lighter, smaller and more efficient heat exchange units, has made the field a very crowded and highly competitive one, as a survey of prior patents and designs makes plain. See McCord Corp. v. Beacon Auto Radiator Co., 1 Cir., 193 F.2d 985. One of the common methods of manufacturing heat exchange units is the cellular construction, of which both the Getz patent and the accused structure are examples. By this method, the passage through which the water flows is defined by a water wall of thin-gauge metal, usually brass, which is folded back on itself and joined at its ends. Into this envelope, open at front and back, a second strip of thin metal, usually of corrugated copper, also doubled back upon itself and joined at its ends, is fitted. The function of the second corrugated strip, commonly called a spacer or separator, is to hold apart the enclosing brass water walls and to form passages for the flow of air between the water walls and the adjacent spacer strip and between the juxtaposed spacers. One of these sections, comprising the enclosing brass envelope and the enclosed copper spacer, may then be clamped or soldered

to another thus forming a cell of multiple sections. The brass water walls are usually ribbed transversely, for strengthening purposes. A complete heat exchange unit is made up by joining many such composite sections side by side, with water tanks fixed at top and bottom.

According to Getz' specifications, the prior art in cellular core heat exchange units was such that the air passages permitted free flow of air from front to rear so that columns of air passed through without contacting the walls of the air and water passages with the result that the heat exchange capacity of the prior art cellular core was comparatively low. This defect or limitation Getz claimed to have eliminated by "constructing the air passages so as to have intimate metal to metal contact of the separators with the walls of the water passages for substantially their full extent from front to back and produce high turbulence of the air passing therethrough * * *."[1] This he accomplished by seating the flattened crests of the "sinuous or undulatory ribs"[2] of his separators upon the broader ribs of the water walls, thus providing both the desired metal to metal contact between the air and water passages and high turbulence in the air stream. And he further specified that a slight projection (referred to in the patent as a guide and positioning element) should be stamped out at the outer sides of the undulations of the ribs of the spacer arms (i. e., on the outer side of the flattened crest of the ribs at the top and bottom of each undulation thereof) in order to assemble and hold the spacer strip in proper relation to the adjacent water wall. By this means, in the process of assembly the projections at the top and bottom of the undulations of each spacer rib straddle one of the wider ribs of the water wall and thus the spacer strips are brought into such relation to the water walls that the flattened undulating crest of the spacer ribs are in metal to metal contact with the wider water wall rib. To be sure, the patent teaches that this metal to metal contact will be maintained by soldering. But the function of the projections as just described is stated to be useful in assembling the unit preparatory to soldering. This feature, of itself, contributes not at all to the heat exchange capacity of the device.

Claims 1 and 6, set forth in the margin,[3] are conceded by both parties to be representative of all of the six patent claims.

The appellant contends the claimed invention rests on two features.

1, 2. Quotation from the specifications.

3. Claim 1.
   "1. In a cellular core for heat exchange units a plurality of sections each comprising two spaced apart substantially parallel and adjacent sheet metal water walls and a sheet metal spacer therebetween parallel therewith, said water walls having spaced transverse ribs of substantially uniform width projecting therefrom inwardly of said section, the water walls of adjacent sections having their front and back marginal portions secured together and being spaced apart therebetween providing water passages between the water walls of adjacent sections, said spacer having undulatory corrugations extending from front to back thereof providing undulatory ribs of curvilinear formation throughout their length with the undulations thereof merging smoothly into each other, said spacer ribs spanning the space between said two adjacent water walls and respectively seating on said transverse ribs thereof, said spacer ribs having outwardly projecting positioning elements at the outer sides of the undulations thereof staddling the respective water wall ribs restraining said spacer ribs against displacement therefrom, said spacer ribs defining in cooperation with said water walls continuous undulatory air passages extending from front to back of said section."
   Claim 6.
   "6. In a cellular core for heat exchange units, a plurality of sections each comprising two spaced apart substantially parallel and adjacent sheet metal water walls and a sheet metal spacer therebetween substantially parallel therewith, said water walls having spaced transverse ribs each provided with a flat surface of appreciable width, the water walls

First. It relies on "tortuous" or undulatory air passages formed by and between parallel ribs which are *overlapping*, "so that each convexity of each rib extends into a corresponding concavity on the next rib, thus precluding columns of air flowing through without contacting the defining metal walls * * *." [4] It concedes "that tortuous or undulatory air passages, *per se*, are old, as evidenced by the Booth Patent, 2,169,993," [5] which was a cited reference in the Patent Office. But it insists that the Getz claims are novel and inventive because the ribs are *overlapping*. The difficulty with this position is that not one of the claims purports to be limited to *overlapping* ribs: each defines [6] the ribs (which in turn define the air passages) in terms that read directly upon patents in the prior art such as Booth. This difficulty, the appellant tries to obviate by pointing to a passage in the specifications (Column 4, line 58) as follows: "The crests or undulations of the ribs 39 overlap, as is shown more clearly in Figures 9 and 10, providing between the ribs 39 tortuous air passages each having a plurality of oppositely directed bends." (Column 4, lines 58–62.) Although nothing in the claims is said about "overlapping" ribs, the appellant insists that the language just quoted from the specifications is an implied limitation on the claims.

This contention we cannot accept: we cannot read the Getz specifications as stating or teaching that *overlapping* ribs are essential elements or that the invention is limited to a structure having *overlapping* spacer ribs. The specifications

recite (Column 2, line 4 et seq.) that the separator with its two arms each having sinuous ribs "the ribs of one being reversed relative to the ribs of the other * * * provides air passages * * * tortuous horizontally as well as vertically, which is conducive to high turbulence of the air and intimate heat exchange contact thereof with the water walls and the strips of the separator." Neither in this passage nor that above-quoted from Column 4, is it taught that air turbulence is effected only by *overlapping* ribs or undulations or that there is anything critical in the proximity of the parallel undulatory ribs or in the amplitude of their undulations although necessarily the relationship between these two factors will control the presence and the degree of overlap. Yet as to these two controlling factors nothing is said. Indeed, Figures 12 and 13 of the patent clearly show that the *crests* of the ribs do not overlap: consistent with these drawings the overlap, if any, must be confined to the side walls of the ribs which were described as V-shaped in cross-section. If such a partial overlapping of the ribs had been intended as an inventive and limiting element of the claims one would have expected that it, if not expressly claimed, would at least have been more clearly specified.

Our conclusion, although supportable on the foregoing considerations, derives still further support from the file wrapper. This showed that when a claim had been rejected as fully met by the Booth patent, the patentee, Getz, admitting that Booth's spacer had horizontal undula-

---

of adjacent sections having their front and back marginal portions secured together and being spaced apart therebetween providing water passages between the water walls of adjacent sections, said spacer having undulatory corrugations extending from front to back thereof providing undulatory ribs of curvilinear formation throughout their length with the undulations thereof seating for substantially their full length upon said flat surfaces of said water wall ribs in metal to metal contact therewith and spanning the space between said two adjacent water

walls and defining in cooperation therewith undulatory air passages extending from front to back of said section, said spacer ribs having interengaging relation with said water wall ribs effective for restraining said spacer ribs against displacement from said water wall ribs."

4, 5. Quotation from appellant's brief.

6. E. g., Claim 1, "undulatory ribs of curvilinear formation throughout their length."

tions, defended substituted claims not on the ground that his (Getz') undulations were *overlapping* and hence patentably distinguishable from Booth, but only on the ground that his undulations, unlike those of Booth, carried the projections described above which served to maintain "the spacer accurately positioned relative to the water walls during assembly of the section * * *." To be sure, at that juncture in the patent history the patentee, in order to overcome the citation of Booth's horizontal undulations, did not insert into his amended claims a limitation which expressly restricted his claimed invention to a structure with overlapping ribs and which would have constituted a conclusive estoppel. But we think that under the situation then confronting him, if he had thought that the overlapping of his undulations constituted a patentable advance over Booth, he would have said so in his remarks in answer to the Patent Office action, and if he had considered the overlapping feature of his undulations an implied limitation upon his claims, he would then have given expression to the limitation in the claims. This failure of response, we think, was in the nature of an implied admission that the overlapping feature of his undulations was not intended as a limitation upon his claims.

But whatever the patentee's unexpressed intent may have been, we must take his claims as the measure of the patent grant. And this is so even when the claims "overclaim the invention." Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 277, 69 S.Ct. 535, 539, 93 L.Ed. 672. We hold, accordingly, that it is not admissible to read into the claims as a limiting element an overlap in the undulations of the spacer ribs. Permutit Co. v. Graver Corp., 284 U.S. 52, 59–60, 52 S.Ct. 53, 76 L.Ed. 163. It follows that neither novelty nor invention may be predicated on the undulating air passages or spacer ribs of any of Getz' claims.

Second. The appellant insists that it involved invention to add to the combination the positioning elements or projections at the outer sides of the undulations of the Getz ribs which assisted, when assembling a section, to bring the spacer arms into proper cooperative relation to the adjacent water wall. We find it impossible, however, to hold that this feature added to the combination any patentable invention over the prior art. Kramer No. 1,606,643 disclosed an automobile radiator in which lugs or projections on water plates [comparable to Getz' spacers] "straddle the crowns of the adjacent corrugations [of water channels, comparable to Getz' water walls] and quite firmly lock the parts against relative movement." Positioning means, which appear to us not distinguishable patent-wise, were disclosed in Przyborowski Patents 2,016,882, 2,073,588 and 2,307,298, and in Oppe, 2,020,957. After all, as to this Getz' only variation from Oppe was a slight change in the location of the positioning projection on the crest of the rib—a change which failed to endow the combination with any new function. Indeed, quite independent of the prior art, we cannot see how invention was required to position one strip upon another by the interaction of projections on the ribs of one or protuberances on the ribs of the other. Surely this was a means which must have been obvious to mechanics skilled in working with sheet metal.

We conclude that none of the elements in the Getz claims is new and that the combination discloses no patentable advance over the prior art. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; McCord Corp. v. Beacon Auto Radiator Co., supra.

Affirmed.