**ELECTROLUX CORPORATION,**
Plaintiff,

v.

**DUSTPAK LTD., Inc. and Anschel Wolf,**
Defendants.

**No. 60 C 608.**

United States District Court
E. D. New York.
March 25, 1963.

John T. Kelton, New York City (Watson, Leavenworth, Kelton & Taggart, Elmer R. Helferich, and Thomas C. Betts, New York City, of counsel), for plaintiff.

Samuel J. Stoll, Jamaica, N. Y., for defendants.

DOOLING, District Judge.

In this suit for infringement of two patents relating to the construction of disposable paper filter bags for use, primarily, in vacuum cleaners of the horizontal cylinder type it has been concluded that the older patent is invalid for want of patentable novelty and that the more recent patent is invalid as embracing nothing not described and claimed in the earlier patent. Findings and conclusions have been made separately.

The earlier patent, No. 2,621,757, issued December 16, 1952 on Anderson's application filed November 28, 1946, related to a disposable paper filter bag for use in a horizontal cylinder type vacuum cleaner like those manufactured by plaintiff. The bag is made up of (a) a rigid rectangular plate, in the center of which there is a hole large enough to admit the inlet pipe of the vacuum cleaner, and (b) a porous paper bag with gusseted, or accordion-pleated, sides which is so glued to the rigid plate that when the rigid plate is held in a horizontal plane, the porous paper bag will hang approximately vertical. The paper bag is so creased that when the rigid plate and the length of the bag are laid in the same horizontal plane, they fold neatly, flatly and compactly upon each other. The rigid plate, in practice, is larger than the rectangular cross section of the porous paper bag and so provides a flange which is useful for engaging a matching seat in vacuum cleaners of the Electrolux horizontal cylinder type. When in use, the rigid plate of the dust bag is located inside the vacuum cleaner casing at the intake end and stands in a vertical plane; the inlet pipe of the vacuum cleaner is thrust snugly into the hole in the center of the rigid plate; the air and entrained dust sucked through the inlet pipe enter the porous bag, distending its walls; the porous paper walls of the bag give passage to the air but not to the dust; the dust is entrapped in the bag; the filtered air passes out through the sidewalls of the bag; and, finally, the suction fan of the cleaner exhausts the filtered air to the room.

The single claim of the patent is upon a combination of certain of the structural elements that make up the bag and end member. The claim is long but must be quoted in full for its expressions are used with nicety:

"A.  A disposable extendable and collapsible dust bag for a suction cleaner,

"B.  said bag being composed of pliable porous sheet material of porosity to permit the passage of air but to preclude the passage of dust particles therethrough,

"C.  said bag having a plurality of pairs of side walls, the walls of each pair being substantially parallel to each other and disposed at an angle to the walls of any other pair when the container is in extended condition,

"D.  the walls of at least one pair being provided with longitudinally extending center creases whereby said walls may be folded inwardly and flat with the remaining walls when the container is in collapsed condition,

"E.  the sheet material forming an extension at one end of each side wall and being folded substantially at right angles to the respective wall when the container is in extended position to form a flat end portion,

"F.  said end portion having an opening therethrough,

"G.  a flat end member of relatively stiff material secured to said end portion and having an aperture communicating with said opening and with the interior of said bag, said end member being relatively rigid,

"H.  at least one of said side walls having a fold line extending transversely of said bag and spaced from the fold where the extension joins said one side wall a distance equal to approximately one-half the width of said end portion whereby said end portion and end member are disposed parallel to said side walls when the bag is in collapsed condition,

"I.  the end of said container opposite said end member being permanently closed."

The essential combination presented in the claim is—

1. a conventional square bottomed, accordion-pleated disposable paper carrying-bag closed at the top by any suitable means (in practice a simple rolling fold crosswise of the bag is used);

2. a rigid piece of cardboard secured to the bottom of the bag;

3. a pipe opening cut through the bottom and the rigid cardboard piece; and

4. the substitution of porous paper for the usual types of carrying-bag paper.

The language of the claim is largely descriptive of the conventional square bottomed paper bag; it accounts for the whole of element "C", "D", "E" and "H"; closing the top of the bag by any means accounts for element "I"; elements "A" and "B" are descriptive of the physical properties of paper bags other than porosity and translation to use in a vacuum cleaner. The remaining elements of the combination provide the indispensable ideas of using porous paper, reinforcing the flat bottom with a rigid end member lying in the same plane as the bottom, and making an inlet-pipe opening through the end member and bag-bottom into the bag's interior.

Novelty is not claimed for any constitutent element, as it need not be, but for the union of them. Defendants cannot demonstrate that precisely the union of elements present here has ever been used before but they insist that the differences from the prior art presented by the present combination are artificial, insignificant and not functional. Plaintiff contends, that the particular combination is not merely unique but provides distinct functional advantages in compactness for packing, shipping and storing; adequacy of volume and surface for use in the machines; and suitability for manufacture on high-speed automatic machinery.

Concededly the carrying-bag art has long known gusseted paper bags of rectangular cross-section when opened out and with squared bottoms; the same art has known such bags with separately applied bottom panels in one or another way lapped to truncated sidewalls as in Honiss, No. 333,523 (1886) and Claussen, No. 401,687 (1889) or super-imposed on the bottom as in Paige, No. 448,142 (1891). Bags fitted with self sealing valves were likewise known, such as Reaney, et al. No. 931,888 (1909). These patents were, explicitly, references of record in the patent office in the file of this patent, as, in substance, were all the prior art patents relied on by defendants, a circumstance that plaintiff properly points to as strengthening the statutory presumption of validity.

The significance, here, of the carrying-bag art is that it was a well-developed art at hand, and that it contained a range of bag devices to be drawn on whenever bag qualities qua bag qualities were sought. The multiplicity of claim elements that appears when a very conventional bag is, in its character as a bag, summoned into a combination and dissected for appropriate claim language inures as only one combinational claim element. It is the bag, as one element, that is in the new combination, even though its structural particulars, as of parallel walls, and transverse crease and longitudinal creases, and so on, reverberate through the claim language in a seeming wealth of significantly combined elements.

It was also old to use disposable porous paper or other bags in vacuum cleaners (Martinet, No. 1,970,666 (1934), Muentener, No. 2,070,674 (1937), Osterdahl, No. 2,225,389 (1940), Dow, 2,316,674 (1940), Smith, British No. 5471 (1914)) and to secure the porous paper bags to a rigid plate, with an inlet pipe hole, that would support the bag when it was inserted in the vacuum cleaner and that would admit the inlet pipe (Smith, Muentener, Dow, supra). What was not old was to invoke into this familiar combination of paper bag with porosity, rigid end plate and plate opening a precision and neatness of bag that draw upon the better resources of the carrying-bag art and of manufacturing practice. The earlier use of porous bags

**370**

tended not to define the bag except as a bag and the examples in evidence and depicted in the figures of the earlier patents tend to be sack-like, rudimentary bags. In addition they, generally, employ circular end plates and, in the case of two types of Air-Way bags, use dished or recessed end plates. Only one bag in evidence (Exhibit N) is unmistakably gusseted and it is fastened to a dished circular end plate and so is not rectangular, when extended, as to the part of the bag near the end plate. One other illustrated bag (Osterdahl 2,225,389) is gusseted and it, too, assumes a cylindrical form at the open end. It is easy to speculate that the shape of the rigid end piece and the adjacent part of the extended bags may be a function of the nature of the seat supplied for the end plate in the vacuum cleaner for which it is designed.

■ Invention cannot be found in Anderson's bringing to the familiar combination a better or, perhaps, a merely better defined bag element than was earlier in use. The case is in principle within Bassick Co. v. R. M. Hollingshead Co., 1936, 298 U.S. 415, 425, 56 S.Ct. 787, 80 L.Ed. 1251; Lincoln Engineering Co. of Illinois v. Stewart Warner Corp., 1938, 303 U.S. 545, 547–548, 549–550, 58 S.Ct. 662, 82 L.Ed. 1008; Application of Lambert, 1948, 165 F.2d 441, 443, 35 CCPA 839. There is not room to argue that Anderson brought into play any new principle or change in the method of co-action of the elements of the old combination. He brought to it a better bag as a bag and it was better wholly within the functions and attributes that belonged to it as a bag. The improvement in the combination was solely derived from the increment in an unchanged kind of utility within that one element of the familiar combination and not in anything peculiar or specific to the union of elements that is the genius of the claim. Concededly, or if not so, then manifestly, there is not here anything distinctly patentable as an improvement in the carrying-bag art, or indeed in any distinct element of the combination. What

has been brought to the combination is not an infusion of fresh invention—but good manufacturing practice and a good choice of a bag from the obviously pertinent carrying-bag art.

■ The emphasis on details of structure that differentiate Anderson from his predecessors is, in this view, misguided. In any case the detailed structural elements are an insubstantial basis for claiming patentable advance. Specifically, the Air-Way gusseted bag, for example, cannot be differentiated on the dished end member or the circularity of the part of the bag near the circular end member or the absence of sidewall extensions bent at right angles to the side wall to form an end portion. Structural differences in the elements are, at first blush, differences only and not advances and difference, even accompanied by improvement in the performance of an unchanged function, is not invention of a fresh combination. Aro Mfg. Co. v. Convertible Top Replacement Co., 1961, 365 U.S. 336, 344–345, 81 S.Ct. 599, 5 L.Ed. 2d 592; Bishop & Babcock Mfg. Co. v. Fedders-Quigan Corp., 2d Cir. 1959, 270 F.2d 102, and, particularly 105–106. Cf. Faulkner v. Gibbs, 1949, 338 U.S. 267, 268, 70 S.Ct. 25, 94 L.Ed. 62. So, in differing from the Air-Way gusseted bag in the respects noted Anderson is not inventive over Air-Way; the Air-Way parts perform the same function as Anderson's differently designed sub-elements and perform them in the same way. Despite its raised edge the Air-Way end-plate is essentially, that is, for functional purposes, "flat"; it furnishes the flat sustaining end wall of a bag and is perforated to admit only an inlet pipe; Anderson's flat end piece does that and does nothing more. The rectangularity of the Air-Way bag serves the purpose of Anderson's rectangularity, to fold flat in narrow compass; it cannot match Anderson's neatness nor flatness but this is a matter of degree within essential sameness. The absence of right-angle-bent sidewall extensions is not significant; neither the claim nor the specification of Anderson requires that the

sidewall extensions have any particular length and the claim does not require that they be turned inward; the function of the "flaps", as the specification of Anderson calls them, is to secure the end member to the bag by any means whatever; Air-Way's different angle of set and its method of stitching outwardly turned sidewall material to the end member accomplishes the purpose in a functionally indistinguishable way. Thus each element of the combination is present in each article and Air-Way's differences are not in function nor in generic means of accomplishing the function but in detail of execution. The same is true, really, of Exhibit 6, an earlier Air-Way bag, save for the absence of the use of a gusseted bag. That difference is the bare substitution of a better but uninventive bag; it brings nothing inventive to the combination. From this it follows that Smith, British No. 5471 (1914) and Dow, No. 2,316,674 (Fig. 8, Fig. 9), too, present the essentials of the combination and that Anderson is not inventive over them.

■ It has, therefore, been concluded that Patent No. 2,621,757 is invalid for want of patentable novelty.

The more recent patent to Anderson, No. 2,737,263 covers the shortening of the sidewall extensions of Patent No. 2,621,757 so that they do not overlap but leave an opening in general register with the hole in the end member through which the inlet pipe is thrust. The advantage of the shortening is in simplifying manufacture. However, the earlier patent did not require any overlap, although the embodiments illustrated, in the main, disclosed it. The claim certainly did not require it.

■ The subject matter of No. 2,-737,263 is described and claimed in No. 2,621,757 and the later patent is invalid. The earlier patent fully taught the use of the extensions or flaps of the sidewalls as a means of fastening the bag to the rigid end member. While much was made of the sidewall extensions, in the course of prosecuting the earlier patent, as furnishing an "end portion" that would act as a closure if there were no rigid end member, this was argued in order to differentiate from prior art and the argument plainly lost sight of the absence of any supporting language in the specification that invoked the idea of any necessary length or direction of bend in the extensions; the argument rested on the illustrated preferred embodiments and not on the function of the flaps. The pictured and, no doubt, then-preferred embodiments, thus, showed overlapping flaps but the claim was unlimited and the flaps, plainly, were non-functional beyond having enough dimension to enable the manufacturer to fasten the end member to the bag. The older patent did not confine its teaching or its claim to the positive idea that the sidewall extensions should overlap and then be cut to give an opening in register with that in the end member. On the contrary, the patentee was explicit that the embodiments described were not the limit of the invention; he could not have been limited to overlapping sidewall extensions in view of the disclosed function of the extensions and the unrestricted breadth of the claim in this respect. The species claim of the later patent, itself vague, teaches nothing and discloses nothing not wholly embraced in the generic element of the earlier claim and presents no improvement upon it. Application of Loiseleur, 1946, 158 F.2d 309, 34 CCPA 765. The later patent concededly contains nothing else not wholly embraced in. the earlier patent. It is hardly necessary to add that, on the analysis made of the older patent, the later patent could not in any event be considered inventive over the earlier patent.